UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

CASE NO.:

SOMPO JAPAN NIPPONKOA
INSURANCE, INC.,

       Plaintiff,

vs.

CSX CORP., CSX TRANSPORTATION, INC.,
AND SAVAGE SERVICES CORP.,

       Defendants.
_____/

## **COMPLAINT**

Plaintiff, Sompo Japan Nipponkoa Insurance, Inc., by and through undersigned counsel, complaining of the Defendants, CSX Corp. and CSX Transportation, Inc., and Savage Services Corp., alleges upon information and belief as follows:

### **THE PARTIES**

1.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that the plaintiff in this action is the citizen of a foreign country and the defendants are citizens of various states, and the matter in controversy exceeds the sum of $75,000, exclusive of costs and interest. Furthermore, to the extent any subrogors might have an interest in this action, no potential subrogor is a resident of the same state as any defendant.  In addition, this court has subject matter jurisdiction

pursuant to 28 U.S.C. § 1337(a), in that this action arises under an act of Congress regulating commerce and the amount in controversy exceeds $10,000, exclusive of costs and interest.

2.      Plaintiff Sompo Japan Nipponkoa Insurance, Inc. ("Sompo"), at all material times to the allegations set forth in the Complaint, was and is foreign corporation organized under the laws of Japan with an office and principal place of business in Tokyo, Japan.

3.      Defendants CSX Corp. and CSX Transportation, Inc. (collectively "CSX"), are corporations organized under the laws of the state of Virginia, with offices and principal places of business at 500 Water Street, Jacksonville, Florida.

4.      Defendant Savage Services Corp. ("Savage") at all material times to the allegations set forth in the Complaint, was and is a corporation organized under the laws of the state of Utah, with an office and principal place of business at 901 W. Legacy Center Way, Midvale, Utah, and is authorized to do and does conduct business in the State of Florida with a registered agent for service of process at CT Corporation System, 1200 South Pine Island Road, Plantation Florida.

5.      At all relevant times hereinafter mentioned, Sompo is and was an insurance company that issued a policy of marine cargo insurance to and/or for the benefit of Honda Motor Co., Ltd. ("Honda Motor"), a corporation organized under the laws of Japan with an office and principal place of business in Japan, and/or Honda of America Mfg., Inc. ("Honda America"), a corporation organized under the laws of the State of Ohio, with an office and principal place of business in Marysville, Ohio; said policy insured,

2

among other things, cargo shipped from Honda Motor to Honda America in international transit, by ocean, rail, truck and/or other intermodal conveyances.

6.     Honda Motor and Honda America were the shipper and receiver, respectively, of a series of cargoes of automobile parts shipped in intermodal shipping containers in January-February 2016 from Japan to the intended destination of Honda America's automobile manufacturing facility in Marysville, Ohio ("the Shipments")

7.     As part of the intermodal transit, the shipments were carried by CSX over rail lines owned and operated by CSX.

8.     In February 2016, Savage was a logistics company providing certain rail services for a client in Marysville, Ohio, and was operating rail equipment on, over and across rail lines owned and operated by CSX.

9.     Venue is proper in this Court in that this action implicates contract(s) of service applicable to CSX and at least one other party that require all actions to be filed in a court of competent jurisdiction in Jacksonville, Duval County, Florida.

## SHIPMENT DETAILS

10.     In January 2016, Honda Motor arranged with non-party Kawasaki Kisen Kaisha, Ltd., d/b/a "K" Line, to ship the Shipments, consisting of more than thirty (30) intermodal shipping containers loaded with automobile parts for new vehicle assembly at Honda America's Marysville automobile manufacturing facility, via sea and rail.

11.     The Shipments were loaded into the intermodal shipping containers at Honda Motor's facility in Tokyo, Japan, in good order and condition, in all ways

properly packed for shipment via sea and rail, and delivered into the custody of "K" Line for intermodal transit.

12.    "K" Line loaded the intermodal containers carrying the Shipments onto the M/V BREMEN BRIDGE for ocean carriage to Tacoma, Washington.

13.    Upon discharge of the containers from the M/V BREMEN BRIDGE at Tacoma, the containers carrying the shipments were delivered in good order and condition into the custody of CSX for rail shipment to Honda America's Marysville automobile manufacturing facility.

## THE CASUALTY

14.    On or about February 9, 2016, Savage was engaged in the moving of rail cars into, out of, and/or in and around a manufacturing facility owned and/or operated by certain clients of Savage, The Scotts Miracle-Gro Co. and/or The Scotts Company, LLC (collectively "Scotts"); the Scotts' manufacturing facility abuts the railway lines and/or rights of way owned and/or operated by CSX in Marysville, Ohio, and contains rail sidings on both sides of the CSX railway lines.

15.    Savage's work in and around Scotts' manufacturing facility on or about February 9, 2016, involved the manipulation of rail switches on the adjoining railway lines and/or rights of way owned and/or operated by CSX.

16.    Savage was conducting its operations on February 9, 2016, in the vicinity of the Scotts' manufacturing facility with the knowledge of and/or pursuant to agreement with CSX.

17.    CSX personnel were aware of and/or authorized the operations of Savage on February 9, 2016, in the vicinity of the Scotts' manufacturing facility.

4

18.    At some point on or about February 9, 2016, Savage improperly left a rail switch in an open and/or unlocked position such that trains proceeding along the adjoining railway lines and/or rights of way owned and/or operated by CSX could be diverted onto a siding within the southwesterly section of the Scott's manufacturing facility and upon which sat unattended rail cars in the care, custody and/or control of Savage and/or Scotts.

19.    At some in the morning of February 9, 2016, CSX railway switching personnel directed a train owned and/or operated by CSX and hauling the rail cars carrying the Honda Shipments through the Scotts' manufacturing facility despite the operations of Savage in and near the Scotts' manufacturing facility.

20.    At or about 10:00am on February 9, 2016, the CSX train carrying the Shipments was traveling in a northwesterly direction along the right of way and/or railway lines owned and/or operated by CSX as it approached the Scotts' manufacturing facility; the train was improperly diverted from the main railway line, by way of the open or unlocked rail switch, onto the siding within the southwesterly side of the Scotts' manufacturing facility, where it collided with one or more unattended rail cars parked on the siding.

21.    As a direct consequence of the collision, segments of the CSX train, including a number of rail cars carrying the Honda Shipments, dangerously decelerated, derailed and overturned, causing damages to the property of Honda America and Honda Motor in an amount suffered damages of no less than $4,275,884.17, no part of which has been paid although duly demanded.

22.     Pursuant to a policy then in full force and effect, Sompo reimbursed its insureds, Honda America and Honda Motor, the sum of $4,275,884.17, and Sompo has become subrogated to and/or the assignee of part or all of the rights, claims and causes of action of its insureds, Honda America and Honda Motor, against any and all parties responsible for the casualty that caused the loss and/or damage to the Honda Shipments; Plaintiff, as the insurer and subrogee of the shippers, consignee, and/or owners of the Shipments, brings this action on its own behalf and, as agent and trustees on behalf of and for the interest of all parties who may be or become interested in the said shipment, as their respective interests may ultimately appear, and Plaintiff is entitled to maintain this action.

### COUNT ONE – NEGLIGENCE AGAINST ALL DEFENDANTS

23.     Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 22 as if fully set forth herein.

24.     Defendants Savage and CSX were negligent in causing and/or permitting a train carrying the Shipments to enter the vicinity of the Scotts' manufacturing facility while Savage was performing work involving the manipulation of rail switches and movement of rail cars, including failing to notify each other regarding any open switches and the impending transiting of the CSX train through the Scotts' manufacturing facility.

25.     Savage was negligent in creating and maintaining a hazard on the CSX railway lines, namely an open and/or unlocked switch that permitted the CSX train carrying the Honda Shipments to divert onto the southwesterly siding within the Scotts Plant, and in failing to attend to the switches and the rail right of way to provide warnings to operators of trains passing along the CSX railway through the Scotts' manufacturing facility.

6

26.     CSX was negligent in not properly supervising Savage in its work along the CSX railway lines and right of way, and in clearing the train carrying the Shipments to pass through the vicinity of the Scotts' manufacturing facility without first ensuring that all switches were properly secured and the railway lines fully cleared through the vicinity.

27.     As a direct and foreseeable consequence of the negligence of Defendants, a switch connecting the main CSX railway line with the southwesterly siding for the Scotts Plant improperly was left in an open and/or unlocked position, thereby diverting the CSX train carrying the Honda Shipments onto a siding occupied by rail cars owned and/or operated by Scotts.

28.     As a direct and foreseeable consequence of the negligence of Defendants, the Honda Shipments suffered physical damage rendering them unfit for their intended use and without any residual value, when the CSX train collided with unattended railcars on the southwesterly siding at the Scotts' manufacturing facility, and rail the cars carrying the Honda Shipments decelerated violently and/or derailed.

29.     As a direct and foreseeable consequence of the negligent acts and/or omissions of Defendants, Honda America and Honda Motor suffered damages of no less than $4,275,884.17, for which Sompo duly reimbursed Honda Motor and Honda America and became fully subrogated to their rights against culpable third parties.

30.     Defendants are liable and indebted to Plaintiff in the sum of at least $4,275,884.17, as well as any recoverable interests, costs and fees, no part of which has been paid although duly demanded.

## COUNT TWO – BREACH OF CONTRACT AGAINST CSX

31.     Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 30 as if fully set forth herein.

32.     In January-February 2016, CSX, and/or its agents and subcontractors, received and accepted the Honda Shipments in good order and condition at and/or in the vicinity of Tacoma, Washington and agreed as common carrier to transport the Honda Shipments for due consideration to Honda America's facility in Marysville, Ohio.

33.     On account of the aforementioned collision and derailment, CSX failed to deliver the Honda Shipments in the same good order and condition in which it received them, but rather delivered the Shipments in a damaged condition unsuitable for use.

34.     CSX breached its contract of carriage with and/or for the benefit of Honda Motor and/or Honda America by failing to redeliver the Shipments in the same good order and condition in which it received them, and was otherwise at fault.

35.     As a direct and foreseeable consequence of the breach of contract of carriage by CSX, Honda America and Honda Motor suffered damages of no less than $4,275,884.17, for which Sompo duly reimbursed Honda Motor and Honda America and became fully subrogated to their rights against culpable third parties.

36.     CSX is liable and indebted to Plaintiff in the sum of at least $4,275,884.17, as well as any recoverable interests, costs and fees, no part of which has been paid although duly demanded.

WHEREFORE, plaintiff prays:

1.     That process in due form of law according to the practice of this Court may issue against Defendants.

2.     That a decree may be entered in favor of Plaintiff against Defendants for the amount of Plaintiff's damages, together with attorneys' fees, interest, and costs.

3.     Plaintiff further prays for such other, further and different relief as to this Court may seem just and proper in the premises.

October 8, 2019
Miami, Florida                            Respectfully submitted,

                                  By:    *S*/*Michael C. Black*

                                         **Michael C. Black, Esquire**
                                         F.B.N. 0056162
                                         mblack@marlaw.com
                                         **MICHAEL C. BLACK, P.A.**
                                         7700 North Kendall Drive, Suite 305
                                         Miami, Florida 33156
                                         Telephone:     (305) 271-8301
                                         Facsimile:     (305) 271-8302
                                         *Counsel for Plaintiff*